AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Colorado

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.  21-mj-00179-NRN |
| | ) | |
| BRIAN HSU | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **October 27, 2021** in the county of **Denver** in the District of **Colorado**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 49, United States Code, Section 46504 | Interference with Flight Crew |
| Title 18, United States Code, Section 113(a)(4) and Title 49, United States Code, Section 46506 | Assault within the Special Aircraft Jurisdiction of the United States |

This criminal complaint is based on these facts:

See Affidavit attached hereto and hereby incorporated by reference.

☑ Continued on the attached sheet.

s/Brandon Barnes
*Complainant's signature*

Brandon Barnes, Special Agent, FBI
*Printed name and title*

Sworn to before me and ☐ signed in my presence. ☑ submitted, attested to, and acknowledged by reliable electronic means.

Date: 10/29/2021

*N. Reid Neureiter*
*Judge's signature*

City and state: Denver, Colorado

Magistrate Judge N. Reid Neureiter
*Printed name and title*

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brandon Barnes, Special Agent with the Federal Bureau of Investigation, being duly sworn, deposes and states under penalty of perjury that the following is true to the best of my information, knowledge, and belief.

**AGENT BACKGROUND & INTRODUCTION**

I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since March 2020. I am a graduate of the FBI Academy in Quantico, Virginia and am currently assigned to the Joint Terrorism Task Force (JTTF) at the FBI Denver Office. My current duties include, but are not limited to, responding to and investigating federal criminal violations occurring on aircraft. I have received training and instruction in the field of investigation of crimes aboard aircraft and have had the opportunity to participate in investigations relating to such crimes, including assault occurring on an aircraft.

**PROBABLE CAUSE**

This affidavit is being submitted in support of a criminal complaint charging Brian HSU with violations to include: Interference with Flight Crew, in violation of Title 49, United States Code, Section 46504 and Assault within the special maritime jurisdiction of the United States pursuant to Title 18, United States Code, Section 113(a)(4) and Title 49, United States Code, Section 46506. Your affiant is also requesting the issuance of an arrest warrant for those crimes. Due to the limited purpose of this affidavit, I have not included each and every fact known concerning this investigation, although, to the best of my information, knowledge and belief, I have not omitted any material fact that undermines the statements and conclusions herein. I have set forth only the facts I believe are necessary to establish probable cause to show that Brian HSU committed the aforementioned violations.

Background:

On October 27, 2021, American Airlines flight 976 from New York City, New York to Santa Ana, California was diverted to the Denver International Airport (within the state and federal judicial District of Colorado) due to an incident involving allegations of a passenger assaulting a flight attendant. After the aircraft landed and at approximately 6:03 p.m. Mountain Daylight Time (MDT), Denver Police Department (DPD) officers arrived at the aircraft, spoke with the flight crew, and took written statements. The officers heard that a passenger had assaulted a female flight attendant. The officers observed the injured flight attendant (Victim), who was bleeding from or around her nose. The Victim provided limited statements to the officers before she left in an ambulance for a nearby hospital to treat her injuries.

When I arrived at the airport, DPD officers briefed me on the incident and provided me with written statements. The individual who had allegedly assaulted the Victim was in a holding cell. Officers identified this individual as Brian HSU. Officers informed me that HSU's mother was waiting outside the DPD office area. At my request, one of the officers escorted me to the airport terminal gate where passengers were waiting to reboard flight 976 and continue to Santa Ana, California. The officer and I asked personnel from American Airlines to help us identify passengers who were seated in the immediate vicinity of HSU and the alleged assault incident. Through this process, we identified and interviewed four such individuals. These interviews were brief because we knew the airplane was going to depart soon. After concluding these interviews, I returned to the DPD office and conducted

interviews of HSU and his mother. All these people were interviewed separately to minimize people's recollections being influenced by the statements of others.

Witness Statements:

The witnesses described the individual who assaulted the victim as an Asian male with short, black hair and a thin build. One witness described this individual as having long fingernails. I observed that these descriptions reasonably matched HSU, whom I subsequently observed in the DPD holding cell.

All four witnesses recalled the assault incident occurring outside an airplane lavatory. One witness (Witness-1) stated that the Victim asked HSU to stay away from the bathroom, whereupon HSU punched her in the face with sufficient force to cause her to hit the lavatory door. Another witness (Witness-2) remembered the victim jumping in front of the lavatory door and HSU striking her with his fist in a way that appeared practiced or trained. The third witness (Witness-3) recalled the victim stating "I have a fractured nose" after the strike. The fourth witness (Witness-4) described a "scramble" between the Victim and HSU and HSU striking the Victim with a "full swing." After the strike, Witness-1 observed a male flight attendant come and repeatedly ask HSU to sit in his seat. HSU did not immediately comply, but eventually sat down. Witness-3 recalled that people came and restrained HSU with duct tape and later plastic bonds.

Many witnesses commented on HSU's odd behavior before and after the incident. Witness-2 described HSU as getting up, walking around the cabin, and stretching an unusual amount. Witness-3 said HSU was "squirming" his hands after being cuffed. Witness-3 also heard HSU ask, "did you see what happened?" and commenting that the Victim "came at me." Witness-1 observed that HSU appeared unusually calm before and after the incident.

Subject's Statements:

After interviewing witnesses, I returned to the airport DPD office to interview HSU. Before starting the interview, I advised HSU of his Constitutional rights per *Miranda* as contained on the FBI Advice of Rights form (FD-395). HSU stated that he understood and signed the form. A DPD officer witnessed my reading the Advice of Rights form to HSU, HSU's acknowledgement of understanding, and HSU signing the form. The witnessing DPD officer and I also signed the form as witnesses.

During his interview, HSU stated that he was returning home to California from New York after receiving brain surgery in Rhode Island. The purpose of the brain surgery was to reconstruct portions of his skull. HSU claimed that he received his skull injury in or around Fall 2020 when he was assaulted in New York City. HSU reported psychological damage from the injury, including ringing in his ears, nausea, dizziness, and loss of balance. He also stated that he is now sensitive to sound and sometimes experiences a mental "fog," during which thinking is difficult. HSU said his parents think he acts differently than he used to.

While on American Airlines flight 976 on October 27, 2021, HSU got up to use the lavatory and was standing and stretching in the corridor between the bathroom and a wall. While stretching, HSU accidentally bumped the Victim flight attendant with his hand or arm. Per HSU, the Victim became agitated and began swinging at HSU's head with her hands, but not her fists. HSU stated that he became scared because an impact to his head in its current state could cause him severe injury or death.

To prevent the Victim from striking his head, HSU claimed that he backed up towards his seat and raised his hands defensively, with his palms facing outward. HSU then stated that the Victim charged at him and hit her nose against the palm of his right hand. After impact, HSU did not see the Victim holding her nose, nor did he see any blood. HSU does not recall how hard the impact was between the Victim's nose and his palm. Soon after, a male flight attendant placed himself between HSU and the Victim, pushed HSU backwards, and restrained him. The Victim then departed towards the front of the airplane and HSU did not see her again until the end of the flight. HSU sat back down in his seat.

HSU mentioned that his right hand had sustained a football injury two or three weeks prior to the flight, which prevents him from making a fist with his right hand. He emphasized this point to demonstrate that he could not have struck the Victim with his right fist. He claimed that the Victim hit her nose against his palm, not his fist.

After the confrontation with the Victim, HSU recalls that the public announcement system stated that a flight attendant had been assaulted. Other people then came to HSU and restrained his legs with brown tape and his hands with plastic cuffs. Other passengers berated HSU and did not want to hear his side of the story. At the end of the flight, HSU saw the Victim taken away in an ambulance.

Statements Obtained from HSU's mother:

HSU's mother was with him on the flight. After concluding my interview with HSU, I interviewed his mother. There were some communication barriers, as English appeared to not be her native language. In addition, it was unclear to me which statements originated from her independent observations and which were recollections of HSU's recounting of events.

HSU's mother stated that after his brain injury, he had symptoms of dizziness and seems to become more easily angered. After his most recent surgery in Rhode Island, HSU had trouble sitting still and frequently felt the need to stretch. On flight 976 on 27 October 2021, HSU was stretching while waiting to use the lavatory and hit the Victim flight attendant in the head or shoulder area while she walked by. The impact of the hit may have been hard, and the Victim may have been hurt. The Victim became angry and rushed towards HSU. HSU raised his palms to defend himself and one of his palms hit the Victim in the nose. HSU's mother did not see any bleeding. The Victim was angry after being hit in the nose. A male flight attendant stood between and separated HSU from the Victim. HSU's mother did not recall the male flight attendant pushing HSU. The male flight attendant cuffed HSU's hands and would not allow him to use the bathroom.

HSU's mother said that HSU is afraid of people touching his head. Also, one of the fingers on his right hand is fractured, such that he cannot make a fist with his right hand. She stated that this injury occurred during a workout. HSU had an orthopedic appointment on 28 October 2021 to inspect the hand. HSU's right hand is what impacted the Victim's nose.

Victim Statements:

As mentioned previously, the Victim flight attendant went to the hospital shortly after arriving at the Denver International Airport. She stayed at the hospital for the night and then left on a morning flight the next day to a location outside the state of Colorado. I was able to establish contact with the Victim over telephone and worked with FBI Agents near her location to coordinate an in-person interview. These Agents made contact and interviewed the victim on 29 October 2021.

The Victim advised that on October 27, 2021, she was the third flight attendant on the aircraft and her responsibilities included service to the business class section of the aircraft. The Victim recounted that the flight and meal service went by without incident. At some point in the flight, the captain illuminated the "fasten seatbelt" sign due to expected turbulence.

The Victim was speaking with another flight attendant in the mid-galley section of the airplane when she felt something strike her in the head. When she turned to see what had struck her, she saw a male passenger and asked if he was all right. The Victim advised that his response to her seemed odd because he did not apologize for hitting her and instead just stated that he needed to use the bathroom. The Victim explained to him that the bathroom was occupied at the moment, and because the pilot had turned on the "fasten seatbelt" sign, he needed to return to his seat and wait for the bathroom there.

The Victim advised that the male passenger raised his arms as though he were going to stretch, but then brought his elbow down and struck the Victim on the head. The Victim then took a defensive posture with her arms out in front of her and her hands up. A that point, the male passenger initially backed down but then charged at her, flailing his arms. This caught the attention of another flight attendant, who came to assist. The male passenger backed down again, but when he charged at the Victim this time, he struck her in the face with the closed fist of his right hand.

The Victim was stunned and walked into the first-class cabin where she met up with the lead flight attendant and reported the assault. The lead flight attendant reacted by placing a drink cart in the aisle to block passage to the flight deck. Both the Victim and lead flight attendant were barricaded by the cart. The lead flight attendant made an announcement asking for two able-bodied passengers to assist the flight crew. The lead flight attendant then reported the assault to the captain. The Victim advised that although she felt dazed and was bleeding from her nose, she was compelled to return to her station on the aircraft. Once back to business class, the Victim was met with the male passenger's female co-traveler. The female co-traveler approached the Victim and said, "he didn't mean it" and as a response the Victim pulled her face mask down to reveal her bloodied face. The co-traveler responded with what the Victim perceived as shock and asked if she were okay. At that point, the lead flight attendant told the Victim to return to her seat and stay there. The Victim advised that her nose was bleeding and she felt dizzy and nauseous. She was given ice for her face and she sat for some time with her eyes closed and iced her injuries. The Victim advised that two passengers approached her at different times and told her that she did nothing wrong and did not deserve to be attacked like that. One passenger claimed to be a doctor and conducted some tests and observations.

The aircraft landed in Denver and someone asked the Victim if she could walk. She felt dizzy when she stood up and felt that it would be difficult to make it down the skybridge. A stretcher was brought and removed the Victim from the aircraft. While on the stretcher, a DPD officer attempted to interview the Victim. The Victim provided the officer with some verbal statements but was unable to make a written statement.

The Victim was taken to the hospital where doctors told her that she had a concussion. The doctors conducted a CT scan but were unable to determine if her nose was fractured because of the swelling and suggested that she get another CT scan when she was home. The Victim stated that she currently has pain in her nose, head, and sinuses.

All of the foregoing occurred while American Airlines flight 976 was operating in the Special Aircraft Jurisdiction of the United States.

**CONCLUSION**:

Based on the foregoing, Your Affiant respectfully submits request that there is probable cause to issue a criminal complaint and arrest warrant for Brian HSU reference the crimes of: Interference with Flight Crew, in violation of Title 49, United States Code, Section 46504 and Assault within the special maritime jurisdiction of the United States pursuant to Title 18, United States Code, Section 113(a)(4) and Title 49, United States Code, Section 46506.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

*s/ Brandon Barnes*
Brandon Barnes, Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN by electronic means this __29th__ day of October, 2021

_____
HON. N. REID NEUREITER
UNITED STATES MAGISTRATE JUDGE

**Affidavit reviewed and is submitted by Bradley W. Giles, Assistant United States Attorney.**